At this point, Justice Stewart is recused to himself from the next case, so we'll proceed with two panel members. That's on Neff v. Continental Tire North America, and the third panel member will be assigned at a later time, and we'll have the opportunity to review the oral tapes. So we have—actually, we just have Mr. Frankel representing the Appellee. And, Mr. Frankel, whenever you're prepared to proceed, you may.  May it please the Court, I'm Tom Frankel of Fire Act Major Green and Ryan, occurring for the Appellee, Continental Tire North America, now known as Continental Tire, the Americas. The matter before the Court arises from the compromised settlement of a disputed workers' compensation plan. The appellant filed an application for judgment in the Jefferson County Circuit Court, claiming that Continental Tire failed to abide the settlement agreement when it sought to fund a workers' compensation Medicare set-aside trust account, according to program instructions which were issued by the Centers for Medicare and Medicaid Services. The Jefferson County Circuit Court dismissed the appellant's claims for sanctions, finding that Continental Tire satisfied its settlement contract obligations under law by funding the trust in an annuitized fashion as dictated by the Centers for Medicare and Medicaid Services, and that the plaintiff lacked standing to bring his claim as he suffered no injury to a recognized crime. The Circuit Court additionally found that the U.S. government is a necessary party to any suit which challenges CMS's funding directives for a Medicare set-aside trust. Jefferson County Circuit Court's dismissal is proper, under law, and should be affirmed. The matter is fully briefed, so I won't disrespect this Court or its rules by reading from my brief. However, a short history involving the Medicare Secondary Payor Act may be helpful to assist the Court in any questions that may arise. In 1980, the Medicare Secondary Payor Act was enacted at 42 U.S.C. 1395, and why is the appropriate relevant section in this matter. Basically, that act provided that Medicare would not be the primary payer for any medical expenses which were properly paid under other insurance or other funding sources. It was an enabling act. It enabled the Secretary of Health and Human Services with the authority to create rules, regulations, and program instructions to effectuate the dictates of that act. In 1989, federal regulations were promulgated in the CFR addressing specifically workers' compensation lump sum agreements, including compromised settlements. Basically, those regulations stated that where funds are allocated to future treatment, that Medicare isn't the primary payer until those allocated funds are used. For Medicare recipients, such as the plaintiff appellant in this matter, Mr. Neff, the Centers for Medicare and Medicaid Services requires that as a condition of any workers' compensation settlement that is in excess of $25,000 total value, certain information be submitted to Medicare so that a determination can be made whether Medicare's interests need to be protected for future treatment arising from a workplace injury that is being settled. If the cost would be more than $62,744 over a period of time, Medicare would have to pay the difference. The $62,744 is an amount which CMS determined was a reasonably foreseeable amount which would protect Medicare's interest over the entirety of the plaintiff's lifespan for treatment that was related to this workplace injury. If there was some unforeseen medical cost or something, would Medicare ever be responsible for it? Absolutely. Once the reasonably foreseeable amount is determined, if in any year there is not adequate funding according to the annuity that Medicare prescribed and dictated in their program instruction, Medicare would pick up the costs for the remainder of that year once that year's funds were exhausted. If there were remaining funds, those funds would roll over into the following years, and at the end of the funds, that is So the plaintiff is going to be protected? Yes. Either by the annuity or by the full faith and credit of the government and Medicare? That is absolutely correct. So there's never any gap by virtue of the fact that, as the plaintiff contends, that this should have been fully funded up front. There's never going to be any difference in the way the law would be applied to the coverage of the plaintiff. Am I clear on that? That is correct. One way or the other. As long as the entrusted funds are spent for proper purposes. I know you're not here arguing on behalf of the other side, but if there's no exposure for the plaintiff, what's the possible reason to object to this type of procedure? Your Honor, I think that's exactly the reason that the Jefferson County Circuit Court found that the plaintiff lacked standing because he suffered no injury to a legally recognized right. The funding went into the trust account for the benefit of Medicare and Centers for Medicare and Medicaid Services, and Continental Tire retained a reversionary interest in those funds per the agreement. He either gets paid by his ex-employer or by Medicare? To the full extent. Exactly. His treatment is fully guaranteed under Medicare. The CMS required that information on his workplace injury as well as information on the settlement be submitted to CMS for their determination of a trust amount, if any, and the proper funding of that account in order to protect Medicare's interests. That was done. Continental Tire hired a company called Gould & Lamb, which is a professional organization, which submits that information to the Centers for Medicare and Medicaid Services in a fashion in which they are accustomed to receiving it, and Medicare issued its final determination as to trust account funding. During the course of the computation of the trust account funding, it first determines what the reasonably anticipated lifetime expenditures related to this workplace injury would be. That is the 62,000-plus number that the court has just made note of. And there's no disagreement as to the amount or anything like that? No, Your Honor. They're not contesting that at all? No, Your Honor. They're just contesting just the simple funding, the use of an annuity as opposed to the full amount of cash? And our understanding is that as a matter of federal preemption, there is no appeal that can take place in the courts as to that amount of money. Certainly I would imagine that a contest over those monies could be taken up with Health and Human Services, but that has not been done and is not at issue. The plaintiff's reasonably anticipated lifespan, his life expectancy, came from government charts, 37 years, and the first-year deposit into the trust was front-loaded in the event that there are any expensive treatments that might be required that are reasonably anticipated, and I believe that amount was somewhat over $5,000 in the first year. Then the remaining 36 years of his life expectancy were dictated by CMS to be funded at $1,599 per year. If you take that life expectancy and divide it into, let me approach this from another fashion, if you take that $62,744 number, I believe it is, and deduct the first-year front-loading and then divide the remaining 36 years into it, you come up with $1,599 plus change. So that total amount is actually the amount that is paid by Continental Tire through this annuitized funding, but the Centers for Medicare and Medicaid Services has dictated that it be funded according to an annuity, and Continental Tire has now paid the initial first year and also purchased an annuity to guarantee those continuing payments through a third-party source. So the plaintiff's action, basically he filed his application for judgment-seeking sanctions against Continental Tire because Continental Tire sought to abide CMS's directive and their mandate by paying a front-loaded initial payment and guaranteeing the payments into the trust account as dictated by CMS. Continental Tire has included a rather extensive appendix to its brief, and I would just like to take this opportunity to point out a few of the maps. In the record at C-41 is the funding schedule that CMS has mandated for this workers' compensation Medicare set-aside trust. The Medicare values only the amount of money at hand. That is, you will find at Appley's appendix A-38 and again at A-41, CMS's policy instructions, which say it is immaterial to Medicare what an annuity may cost in present-day dollars. The only numbers which are material to Medicare is that the dollars which they have dictated be available in the trust are available at the time of payout. Hence, the annuitized schedule is in perfect compliance with the amount of funds that Medicare has determined are reasonably anticipated throughout the plaintiff's lifespan. Finally, and I don't think we need to go into it in any great detail, but as the court has pointed out, Judge Palmer, I believe the court is prudent in noting that there is no injury whatsoever to the plaintiff because his only expectancy is that his treatment will be paid for by Medicare for his employer through this set-aside trust, and that is guaranteed through CMS's directive. And finally, for the plaintiff to challenge that CMS has somehow improperly, through preemptive federal law, dictated that the annuitized funding of a Medicare set-aside trust, which is exclusively for the benefit of Medicare, would require the U.S. government to be named as a necessary party to that action. That being said, the matter is fully briefed, but I will be happy to entertain any questions the court may have. I don't think we have any questions. No rebuttal, right? And you don't get any rebuttal. So thank you very much for your briefs and arguments. We'll take the matter under advisement.